UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

JANIE ELIZABETH MAXIESON                                            PLAINTIFF

v.                                                      CIVIL ACTION NO. 4:23CV-P59-JHM

MIRANDA THRASHER *et al.*                                       DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff Janie Elizabeth Maxieson, a pretrial detainee at the Grayson County Detention Center (GCDC), filed the instant 42 U.S.C. § 1983 action. This matter is before the Court on an initial review pursuant to 28 U.S.C. § 1915A.

Plaintiff filed the complaint in this action (DN 1) and later filed an amended complaint (DN 10). Plaintiff also filed a complaint which was opened as a separate action. The Court found that both actions pertain to acts allegedly taken by GCDC officers in March and April 2023 in administering insulin to Plaintiff and ordered that the two cases be consolidated (DN 11). In doing so, the Court directed the complaint in the separate action be docketed in this case (DN 12). The Court will conduct an initial review of the complaint and two amended complaints under § 1915A. For the reasons stated below, the Court will dismiss the action.

**I. SUMMARY OF ALLEGATIONS**

Plaintiff writes in the top margins of all three complaint forms, "Negligence & malpractice." In the original complaint, Plaintiff sues GCDC Officers Miranda Thrasher and Katlin Saltsman in their official capacities only and sues Jailer Jason Woosley in his individual and official capacity. In the amended complaint filed in the original action (DN 10), Plaintiff sues Defendant Thrasher in her official capacity only and sues Defendant Woosley in his individual and official capacity. In the amended complaint initially filed in the separate action and

consolidated with and docketed in this action (DN 12), Plaintiff sues Defendants Thrasher and Saltsman in their official capacities only and sues Defendants Woosley and Nurse Desiree Walton in their individual and official capacities. Broadly construing the complaint and amendments, as the Court must do at this stage, the Court construes the action as brought against all of the named Defendants.

In the amended complaint (DN 10)[1] filed in the original action, Plaintiff alleges that on March 2, 2023, Defendants Thrasher and Saltsman came to Plaintiff's cell to give her insulin. She reports as follows:

> [T]hey checked [Plaintiff's] sugar which was 89, so officer Miranda Thrasher drew up 10 units of Novolin "R" insulin which is a fast acting insulin, officer Miranda Thrasher was supposed to draw up 10 units of Glargine Insulin which is a long lasting insulin. While the needle was in my arm Officer Miranda Thrasher told me to pass her back the syringe, I asked why and she said nothing, she just asked if I had used the insulin in the syringe, so I pulled the needle out of my arm and passed Miranda back the syringe, once she got the syringe, I looked on the med cart and aw both boxes of insulin sitting on the cart and I asked officer Thrasher did that syringe have Novolin "R" in it, and both officers stated yes. And I stated if I would have pushed that insulin into my arm I could have died. At the 8 pm med pass I spoke to officer Thrasher and asked her why didn't she check the insulin before she drew the insulin up, and she stated that she assumed it was right, I also spoke with officer Saltsman and she stated that she felt officer Thrasher was the one who mixed up the meds, after making that statement officer Saltsman refused to say anything else about what happened . . . .

Plaintiff states that each diabetic inmate "has their own insulin in a plastic bag with our names on it." She alleges that "someone switched Glargine insulin that was in the bag with my name on it, with the Novolin 'R.'"

Plaintiff also maintains that she sent out a first grievance and Defendant Walton "replied this has been addressed with deputies involved." She states that she attempted to follow the

---

[1] The amended complaint at DN 10 repeats the same allegations in the original complaint at DN 1 concerning the incident on March 2, 2023, but adds new allegations concerning Plaintiff's efforts to exhaust her administrative remedies. The Court quotes only the amended complaint at DN 10 and will separately summarize the amended complaint at DN 12 that was initially docketed in the separate action.

grievance process but that Defendant Walton replied again when it should have gone to the colonel. She reports that her third appeal was answered by another medical provider and that it should gone to the Chief Deputy. She states that she tried to follow the grievance procedure by filing a fourth appeal which was answered by Defendant Woosley. She states that she was "threatened with these words, this grievance has been answered and addressed multiple times by more than one staff member. Writing the same grievance multiple times to multiple staff will not change the answer and is considered abusing the grievance system." She was informed that she could be subjected to administrative charges. Plaintiff maintains that this violated "inmate rules and handbook."

As relief, Plaintiff seeks compensatory and punitive damages and "to be removed from [GCDC] and have a doctor check me out."

In the amended complaint initially filed in the separate action but consolidated and docketed in this action (DN 12), Plaintiff states that on April 6, 2023, Defendants Thrasher and Saltsman came to give out insulin. She asserts the following:

> [T]hey checked my sugar drew up 35 units of glargine insulin which is a long lasting insulin officer Thrasher showed officer Katlin the needle and she confirmed the 35 units which in fact wasn't correct I'm suppose to receive 15 units of glargine twice a day for a total of 30 units 15 in the am and 15 in the pm. Officer Katlin is very aware of my insulin intake as she administers my insulin daily. When officer Thrasher passed me the needle I checked the needle for air & the correct units. There was an extra 20 units in the needle and I asked what is this officer Thrasher said what and I went on to tell her that I'm only supposed to recieve 15 units not 35 and she stated Oh yeah I forgot. That isn't acceptable diabetic mar has the amount of insulin I should be given daily that is what should be acknowledged daily. This is the second time in less then 32 days with these same two officers my life is being placed in danger I'm to the point to where I'm not wanting to take my medication from these officers.

Plaintiff also reports that she spoke with her attorney about the issue and he informed her that "the medical staff told the U.S. Marshalls that the officers involved had received additional training in drawing insulin after the first incident and that medical is monitoring what's going on."

3

## II.  STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. ANALYSIS

### *A. § 1983 claims*

#### *1. Official-capacity claims*

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Therefore, Plaintiff's official-capacity claims against Defendants are actually brought against their employer, Grayson County. *Id.* at 165.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). In regard to the second component, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff does not assert that any of the alleged actions taken by Defendants occurred pursuant to a policy or custom of Grayson County. In fact, she alleges that Defendants' actions violated jail policy. Accordingly, her official-capacity claims against all Defendants must be dismissed for failure to state a claim upon which relief may be granted.

### 2. *Individual-capacity claims*

#### a. Defendant Woosley

To state a claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Plaintiff does not allege that Defendant Woosley was personally involved in the administration of her insulin but appears to sue Defendant Woosley based on his supervisory role as Jailer. Therefore, Plaintiff's individual-capacity claim against Defendant Woosley will be dismissed for failure to state a claim upon which relief may be granted.

To the extent Plaintiff is alleging a claim against Defendant Woosley based on his role in addressing her grievances, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his handling of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim.").

Therefore, Plaintiff's individual-capacity claim against Defendant Woosley concerning the handling of her grievances must also be dismissed for failure to state a claim upon which relief may be granted.

### b. Defendant Walton

Plaintiff's allegations against Defendant Walton are based only on the handling of her grievances. Therefore, for the reasons stated above, the individual-capacity claim against Defendant Walton must also be dismissed for failure to state a claim upon which relief may be granted.

### c. Defendants Thrasher and Saltsman

Plaintiff did not sue Defendant Thrasher or Saltsman in their individual capacities. However, the Court may allow Plaintiff to amend her complaint to sue Defendants Thrasher and Saltsman in their individual capacities. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir.

2013) ("[A] district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act])." Before doing so, the Court must first consider whether amendment would be futile. *See Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014) ("Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so, *LaFountain v. Harry*, 716 F.3d [at] 951 . . ., and leave to amend should be denied if the amendment would be futile.").

"Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs[.]" *Hyman v. Lewis*, 27 F. 4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted; brackets in *Hyman*). The Sixth Circuit has articulated the standard for a Fourteenth Amendment claim of deliberate indifference as requiring that a plaintiff must show (1) the existence of a sufficiently serious medical need, and (2) "that each defendant 'acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)) (internal quotation marks omitted).

For the purposes of initial review, the Court concludes that Plaintiff's need for insulin meets the objective requirement for stating a sufficiently serious medical need. However, Plaintiff cannot satisfy the second component because she does not allege that Defendant Thrasher or Saltsman acted deliberately or recklessly in administering her insulin. Plaintiff alleges an accidental mix up of her insulin on two occasions. A pretrial detainee must allege "more than negligence but less than subjective intent—something akin to reckless disregard." *Brawner*, 14 F.4th at 596 (internal quotation marks omitted). Nothing in the complaint or amendments suggests

8

that Defendant Thrasher's or Saltsman's actions were deliberate or reckless rather than an oversight due to negligence.

Therefore, allowing Plaintiff to amend the complaint to sue these Defendants in their individual capacities would be futile.

### B. *State-law claims*

Plaintiff also alleges negligence and malpractice against Defendants. Because Plaintiff's federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over any state-law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). The state-law claims, therefore, will be dismissed without prejudice.

### IV. CONCLUSION

The Court will enter a separate Order of dismissal for the reasons stated herein.

Date: November 2, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
4414.010